**Nos. 22-3101, -3102**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LARRY HOLDER, *et al*, individually, and
on behalf of all others similarly situated,
Plaintiffs-Appellees/Cross-Appellants

v.

A & L Homecare & Training Center, LLC, Dawnetta Abbett, and Ruthie Lucas
Defendants-Appellants/Cross-Appellees.

On Appeal from the United States District Court for the Southern District of Ohio,
Case No. 1:20-CV-00757

**BRIEF FOR THE SECRETARY OF LABOR AS
*AMICUS CURIAE* IN SUPPORT OF
PLAINTIFFS-APPELLEES/CROSS-APPELLANTS
URGING AFFIRMANCE OF THE DISTRICT COURT'S ORDER
GRANTING LEAVE TO ISSUE NOTICE**

SEEMA NANDA
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

LINDSEY ROTHFEDER
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
Room N-2716
200 Constitution Ave., N.W.
Washington, D.C. 20210
(202)-693-7052

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................ i

TABLE OF AUTHORITIES ..................................................... ii

INTEREST OF AMICUS AND AUTHORITY TO FILE .......................................1

STATEMENT OF THE ISSUE ADDRESSED BY AMICUS CURIAE................2

STATEMENT OF THE CASE....................................................................2

    A.    The Fair Labor Standards Act's Statutory Collective Action ......................... Framework............................................................................................2

    B.    Discretionary Judicial Management of FLSA Collective Actions ...............5

    C.    Procedural History and the District Court's Decision ................................11

SUMMARY OF THE ARGUMENT ......................................................14

ARGUMENT .........................................................................................15

THE DISTRICT COURT PERMISSIBLY AND PROPERLY AUTHORIZED DISCOVERY REGARDING, AND NOTICE TO, POTENTIAL OPT-IN EMPLOYEES FOR TWO OF THE THREE PROPOSED FLSA COLLECTIVE ACTIONS ...............................................................................................15

    A.    In accord with the Supreme Court's *Hoffman-La Roche* Decision, District Courts Have Case Management Discretion Regarding Collective Actions.15

    B.    Because This Case Is Different from *Swales*, This Court Need Not Opine on Whether *Swales* Was Correctly Decided. ....................................................17

    C.    The District Court Did Not Abuse Its Discretion by Permitting Notice Where Plaintiffs Had Provided Sufficient Evidence of the Existence of Other Similarly Situated Claimants..............................................................21

CONCLUSION.......................................................................................25

CERTIFICATE OF COMPLIANCE.......................................................26

# TABLE OF AUTHORITIES

**Cases**                                                    **Page (s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................... 23

*Bell Atlantic Corp. v. Twombley*,
   550 U.S. 544 (2007) .......................................................... 23

*Canaday v. The Anthem Cos., Inc.*,
   9 F.4th 392 (6th Cir. 2021) ................................................ 3

*Comer v. Wal-Mart Stores, Inc.*,
   454 F.3d 544 (6th Cir. 2006) ......................................... 6, 7

*DeAscencio v. Tyson Foods, Inc.*,
   342 F.3d 301 (3rd Cir. 2003) ............................................ 4

*Frye v. Baptist Mem'l Hosp., Inc.*,
   495 F. App'x 669 (6th Cir. 2012) ...................................... 8

*Gallager v. Gen. Motors Co.*,
   2020 WL 3481649 (E.D. Mich. Jun. 26, 2020) ................. 22

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) ..................................................... 3, 6, 7

*Gorie v. Amazon.com Servs., LLC*,
   2021 WL 4304281 (N.D. Ohio Sept. 22, 2021) ............... 22

*Grayson v. K Mart Corp.*,
   79 F.3d 1086 (11th Cir. 1996) ........................................... 4

*Helena Agri-Enters, LLC v. Great Lakes Grain, LLC*,
   988 F.3d 260 (6th Cir. 2021) ........................................... 15

*Hoffmann-La Roche v. Sperling*,
   493 U.S. 165 (1989) ................................................... Passim

*In re HCR ManorCare, Inc.*,
   2011 WL 7461073 (6th Cir. Sept. 28, 2011) .................................................. 8, 23

*Killion v. KeHE Distributors, LLC*,
   761 F.3d 574 (6th Cir. 2014) ................................................................................ 3

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) ........................................................................................... 16

*Marlow v. Mid-South Maint. of Tennessee, LLC*,
   2021 WL 981550 (M.D. Tenn. Mar. 16, 2021) ................................................. 22

*Miner v. Newman Tech., Inc.*,
   2021 WL 3652277 (N.D. Ohio Aug. 18, 2021) ................................................. 22

*Monroe v. FTS USA, LLC*,
   860 F.3d 389 (6th Cir. 2017) ........................................................................ 3, 13

*Pittman v. Experian Info. Sols., Inc.*,
   901 F.3d 619 (6th Cir. 2018) ...................................................................... 15, 16

*Pritchard v. Dent Wizard Int'l Corp.*,
   210 F.R.D. 591 (S.D. Ohio 2002) ....................................................................... 8

*Swales v. KLLM Transp. Sers, L.L.C.*,
   985 F. 3d 430 (5th Cir. 2021) ..................................................................... Passim

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 44 (2016) .............................................................................................. 7

*White v. Baptist Mem'l Health Care Corp.*,
   699 F.3d 869 (6th Cir. 2012) ..................................................................... Passim

**Statutes**

28 U.S.C. § 2072 ....................................................................................................... 15
28 U.S.C. § 2075 ....................................................................................................... 15
29 U.S.C. § 204 ........................................................................................................... 1
29 U.S.C. § 211(a) ...................................................................................................... 1
29 U.S.C. § 216(c) ...................................................................................................... 1
29 U.S.C. § 217 ........................................................................................................... 1

29 U.S.C. § 216(b) ................................................................ 2, 3, 4, 5
29 U.S.C. § 256(b) ....................................................................... 4
29 U.S.C. § 551 ........................................................................... 1

## Rules

Fed. R. Civ. Proc. 23 ............................................................. 3, 4, 6
Fed. R. Civ. Proc. 26(b)(1) ................................................... 14, 16
Fed. R. Civ. Proc. 83(b) ............................................................ 15
Fed. R. of App. Proc. 29(a) ........................................................ 1

## **INTEREST OF AMICUS AND AUTHORITY TO FILE**

Federal Rule of Appellate Procedure 29(a) authorizes the Secretary of Labor

("Secretary") to file this brief. The Secretary administers and enforces the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 204, 211(a), 216(c), 217, and has an

interest in preserving the ability of employees to enforce their FLSA rights in

private collective actions, as the Secretary relies upon private enforcement, in

tandem with the Secretary's enforcement, to ensure robust compliance with the

Act. *See* 29 U.S.C. § 551 (Department of Labor's obligation to promote the welfare

and interest of wage earners in the United States).

## STATEMENT OF THE ISSUE ADDRESSED BY AMICUS CURIAE

In keeping with the parameters of discretion afforded by *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 172 (1989), did the district court appropriately permit discovery to identify, and notice to be sent to, potential opt-in employees in two collectives in a case brought under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

## STATEMENT OF THE CASE

A. The Fair Labor Standards Act's Statutory Collective Action Framework

1. Section 16(b) ("16(b)") of the Fair Labor Standards Act ("FLSA" or "the Act") establishes liability for violations of the Act's wage requirements and gives employees a private right of action to recover damages. 29 U.S.C. § 216(b). Specifically, Congress conferred the "right" to bring a FLSA action individually and on behalf of "other employees similarly situated." *Id*. The right to sue collectively has been integral to the FLSA since its enactment. Fair Labor Standards Act of 1938, § 16(b), 52 Stat. 1060, 1069 (1938).

This "explicit statutory direction of a single [FLSA] action for multiple plaintiffs," *Hoffmann-La Roche*, 493 U.S. at 172, allows FLSA plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system by allowing "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful]

2

activity," *id.* at 170. Section 16(b) thus sets forth Congress's "policy that [FLSA] plaintiffs should have the opportunity to proceed collectively." *Id.*; *see also Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 590-91 (6th Cir. 2014) (citing *Hoffmann-La Roche*, 493 U.S. at 170).

2. To opt in to a collective action as a "party plaintiff," an employee must file a written consent in court. 29 U.S.C. § 216(b). ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in [court]."). Similarly situated employees need not file a motion or rely on any federal rule because their right to opt in is granted by 16(b). "Once they file a written consent, opt-in plaintiffs enjoy party status as if they had initiated the action." *Canaday v. The Anthem Cos., Inc.*, 9 F.4th 392, 394 (6th Cir. 2021). In part because of this opt-in structure, which creates a "significant difference in procedure between the FLSA and [Federal Rule of Civil Procedure] 23," "[c]ollective actions under the Fair Labor Standards Act (FLSA) are a unique species of group litigation." 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Proc.* § 1807 (3d ed. 2008); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA.").

Because of 16(b)'s unique statutory structure, Rule 23 requirements do not apply to 16(b) actions. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 405-06 (6th Cir.

2017) (this Court has "refused to equate the FLSA certification standard for collective actions to the more stringent certification standard for class actions under Rule 23"); *DeAscencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3rd Cir. 2003) (Rule 23 does not apply to FLSA actions); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[T]he requirements for pursuing a § 216(b) class action are independent of, and unrelated to, requirements for a class action under Rule 23…."); *see also* Advisory Committee Notes accompanying the 1966 amendments to Rule 23 ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.").

One of the most crucial procedural distinctions between a Rule 23 class action and a FLSA collective action is that a lead plaintiff's filing of a FLSA collective action does not toll the Act's statute of limitations for employees who later opt in. 29 U.S.C. § 256(b); *see also id.* at § 255(a) (two-year statute of limitations for FLSA violations, but three-year statute of limitations if violations were willful); Wright & Miller § 1807 ("Unlike Rule 23 class actions in which the statute of limitations will be tolled for all class members until the class-certification decision has been made, or until an individual class member opts out, the statute of limitations for a plaintiff in a [FLSA] collective action will be tolled only after the plaintiff has filed a consent to opt in to the collective action"). Therefore, the "benefits" of the FLSA's statutory collective action provision

"depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 482 U.S. at 170.

B. Discretionary Judicial Management of FLSA Collective Actions

1. In *Hoffman-La Roche*, the Supreme Court held that "district courts have discretion, in appropriate cases" to implement 16(b) "by facilitating notice to potential plaintiffs." 482 U.S. at 169. That holding arose from a case in which a lead plaintiff, who alleged wrongful discharge, sent his own notice to, and received consents from, hundreds of other potential plaintiffs before filing his collective action. *Id.* at 168. After he filed suit as a collective action, he moved for discovery of the names and addresses of other similarly situated employees and asked the court to provide notice to all potential plaintiffs who had not yet filed consents. *Id*. The employer opposed those requests, and further attacked the validity of the consents that plaintiff had already received, alleging that they were based on a misleading account of the litigation in the plaintiff's notice letter. *Id*. The district court granted the requested discovery and authorized a court-approved notice to potential plaintiffs. *Id.* at 169.

In affirming the district court's procedural decisions, *Hoffman-La Roche* confirmed that 16(b) confers discretion on district courts to authorize and facilitate "accurate and timely notice concerning the pendency of the collective action" to

5

similarly situated employees. 483 U.S. at 170; *see also id.* ("Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."). The Court also confirmed the authority of district courts to order threshold discovery relevant to providing this notice, such as discovery of the names and addresses of the employees alleged to be similarly situated. *Id.*

2. In the more than 30 years since *Hoffman-La Roche*, district courts have frequently exercised their discretion by using a two-step process often called "conditional certification" and "final certification."[1] *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). At the first "conditional certification" stage, plaintiffs move, usually early in the litigation, for authorization to send notice of the litigation and opt-in information to one or more specific proposed classes of employees. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546

---

[1] Both the "conditional certification" terminology, which is used to describe a court's decision to authorize discovery and send notice, and the "final certification" terminology are misleading misnomers because at neither stage does the district court technically certify a class. As the Supreme Court has noted, unlike in the Rule 23 context, under the FLSA, "'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Accordingly, except where quoting, the Secretary refrains from using this terminology herein.

(6th Cir. 2006). At the second "final certification" stage, after any consents have been filed with the court and discovery has concluded, the district court grants or denies employees' request to proceed to trial as a collective based on whether the court finds that the pool of specific plaintiffs is actually similarly situated. *Id.* The Supreme Court has treated this process as a basic feature of FLSA litigation, referring to the two-phase process in two recent cases, and explaining that "the 'sole consequence of conditional certification [under 16(b)] is the sending of court approved written notice to employees … who in turn become parties to a collective action only by filing written consent." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).

3. In accordance with *Hoffman-La Roche* and applying an abuse of discretion review, this Court has repeatedly endorsed district courts' significant case management discretion over the procedural method for determining whether employees are similarly situated such that notice may issue. *Comer,* 454 F.3d at 546 (affirming the district court's grant of notice, after preliminary discovery and as part of a two-phase process, because "the district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit" after "first consider[ing] whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated." (citing *Hoffman-La Roche* 493 U.S.

7

at 169, and *Pritchard v. Dent Wizard Int'l Corp.,* 210 F.R.D. 591, 594 (S.D. Ohio 2002))); *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012) (no abuse of discretion where a court determined a collective was not similarly situated); *White*, 699 F.3d at 877-78 (describing, without criticism, the widespread use of the two-phase process, wherein the first-phase review is a "fairly lenient" one, while affirming the district court's decision to "decertify" the collective because the named plaintiff's FLSA claims had been dismissed and therefore plaintiff could not be similarly situated to potential opt-ins).

Likewise, this Court previously denied a request, on a writ of mandamus, that it categorically prohibit a court from permitting notice after a preliminary "similarly situated" review as part of a two-phase process; the Court did not suggest that courts must always follow a lockstep process to determine when notice should issue, but rather, left the question to the district court's discretion within the parameters established by 16(b) and *Hoffman-La Roche*. *In re HCR ManorCare, Inc.*, No. 11-3866, 2011 WL 7461073 (6th Cir. Sept. 28, 2011). The Court stated that "[d]istrict courts have discretion to facilitate the notice of a pending FLSA action to potential plaintiffs and to advise them of their opportunity to opt into the action." *Id.* at *1 (citing *Hoffmann-La Roche*, 493 U.S. at 169). It concluded that "[t]he petitioners have not demonstrated that the district court

8

abused its discretion in utilizing the two-step processes generally applied by the district courts in managing the potential joining of additional plaintiffs." *Id.*

4. In 2021, the Fifth Circuit's decision in *Swales v. KLLM Transp. Sers, L.L.C.*, 985 F. 3d 430 (2021), reversed a district court's order authorizing the issuance of notice on the ground that, prior to permitting notice to issue, the district court had failed to adequately consider whether differences among truck drivers would prevent those drivers from being sufficiently "similarly situated" for purposes of the collective adjudication of whether they were incorrectly classified as independent contractors. As a starting point, *Swales* reasoned that 16(b) and *Hoffman-La Roche* establish two "interpretive first principles": only similarly situated employees may proceed as a collective, and courts may facilitate notice to potential plaintiffs but they may not signal approval of the merits or otherwise stir up litigation. 985 F.3d at 434. According to the Fifth Circuit, prior to the issuance of notice, a court should consider "whether the merits questions in the case can be answered collectively." *Id.* at 442.

Applying these principles to the case before it, the Fifth Circuit focused on whether and to what extent purported different factual circumstances – such as differences in the length of the drivers' contracts and the control they had over their profitability – might make it necessary to decide on a person-by-person basis whether the drivers were misclassified as independent contractors. *Id.* at 442-43.

9

The Fifth Circuit concluded that the district court had failed to consider evidence regarding whether drivers' claims could be adjudicated on a collective basis because the court mistakenly believed that it should not consider evidence relevant to the merits at the collective-action notice stage. *Id.* at 438, 442. Although the employer in *Swales* had "pointed to evidence showing that the application [of the law] would require a highly individualized inquiry" – and the district court conceded that the employer "may ultimately have a point" – the district court simply ignored this in deciding that notice should be sent to other employees. *Id.* at 438.

"The bottom line," the Fifth Circuit opined, "is that the district court has broad, litigation management discretion here," bound only by the similarly situated requirement and *Hoffman-La Roche*, such that it should not feel confined to permit notice to be sent without first "rigorously enforce[ing]" the similarly situated requirement "at the outset of the litigation." *Id.* at 443. The Fifth Circuit also criticized the practice of requiring adherence to a two-step "conditional certification" framework, believing that following that abstract formulation could distract from a focus on whether the "similarly situated" requirement is satisfied. *Id.* at 439-41. The Fifth Circuit concluded that a district court should instead identify, at the outset of the case, "what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Id.*

at 441.  The Fifth Circuit stated that varying amounts of preliminary discovery

would be necessary depending on the specifics of each case. *Id.* at 441-42.

### C.  Procedural History and the District Court's Decision

The district court here "conditionally certified" two of the three collectives

requested by several home health aides ("Plaintiffs") who filed a FLSA lawsuit

against A&L Home Care and its owner/managers ("Defendants"). Decision

Granting in Part and Denying in Part Motion to Conditionally Certify Collective

Action ("Decision"), RE 29, Page ID ## 452-453. The district court stated that it

was applying "a fairly lenient standard," citing to this Court's decision in *White*,

699 F.3d at 877. Decision, RE 29, Page ID # 430. The district court further

explained that Plaintiffs had set forth "something more than mere allegations" for

the two collectives and therefore the court approved notice. *Id*. at Page ID # 431.

As to the first collective it "conditionally certified," the district court

approved the issuance of notice to employees who traveled between clients' homes

during the workday and worked more than 40 hours per week. *Id.* at Page ID ##

432-434. Plaintiffs alleged – and Defendants did not dispute – that travel time

between work sites (i.e., clients' homes) was never counted as compensable time,

as it must be under the FLSA. *Id.* The sole question for purposes of the court's

analysis was whether there were employees other than the Plaintiffs who were

subject to this common policy. In support of its first-phase conclusion that there

were in fact potential opt-ins who were similarly situated in regard to the alleged
travel time violation, the district court cited to multiple facts, supported by
employee declarations, suggesting that other employees were subject to the same
policy. *Id.* Specifically, the district court emphasized declarations stating that the
lead Plaintiffs were told at large-group orientations not to record their travel time,
and gave weight to routinely-generated records showing mileage but not travel
time. *Id*. Defendants did not argue that individual differences would result in their
travel time policy being compliant with FLSA's overtime provisions when
employees worked more than forty hours per week; instead, they insisted that
Plaintiffs should have also presented declarations from the other employees who
were subject to this policy. *Id.* However, the district court determined that
Plaintiffs' uncontroverted evidence was enough to "show[] that the claim of
nonpayment for travel time is not individual to Plaintiffs but, rather, potentially
involves other employees." *Id.* at Page ID # 434.

As to the second collective it "conditionally certified," the district court
approved the issuance of notice to employees who received shift differential pay
and worked more than 40 hours per week. *Id.* at Page ID ## 434-435. Plaintiffs
alleged, and Defendants did not dispute, that this shift differential pay was not
included in overtime calculations as it must be under the FLSA, citing to
declarations of employees who testified about the routine exclusion of this shift

deferential from overtime hours. *Id.* In support of its first-phase conclusion that there were potential opt-ins who were similarly situated in regard to this claim, the district court cited a declaration from a supervisor stating that all home health aides working certain kinds of shifts received a shift differential hourly premium, pursuant to a companywide policy for calculating shift-differentials and overtime contained in the employee manual. Again, Defendants did not point to any contrary evidence or suggest that the lawfulness of this policy depended on individualized considerations. The district court thus concluded that the supervisor's declaration was enough "to satisfy the lenient burden of demonstrating that a similarly situated collective of potential [shift-differential] plaintiffs exists." *Id.*

The district court rejected a third collective of employees who alleged their wages were *de facto* lowered below the minimum wage because they were not sufficiently reimbursed for the expense of using their own vehicles between clients' homes during the workday. *Id.* at Page ID # 435. The district court determined that Plaintiffs did not show that they "had actual or even constructive knowledge that their coworkers also used their own vehicles to travel from client to client." *Id.* Therefore, though Plaintiffs alleged that they personally had never been reimbursed for vehicle expenses, they had failed to put forth anything beyond speculation that other employees with similar experiences existed. *Id.*

## SUMMARY OF THE ARGUMENT

This Court has never boxed district courts into a rigid procedure for determining whether FLSA claimants are similarly situated, and it is unnecessary to do so now. District courts need not be stripped of routine discretion over the process for conducting discovery regarding, and providing notice to, similarly situated employees who may potentially opt in to a FLSA collective action.

Likewise, this Court need not opine on whether the Fifth Circuit's decision in *Swales* was correctly decided, as *Swales* arose out of different facts and answered different questions than those at issue here. Furthermore, the district court's decision does not conflict with *Swales'* assessment of the key principles of 16(b) and *Hoffman-La Roche*; based on the evidentiary submissions before it, the district court's review was sufficient to determine that two collectives of similarly situated employees existed who could receive notice of collective actions without unduly stirring up litigation. Therefore, this Circuit should affirm the district court's decision permitting notice to the travel-time and shift-differential potential opt-in employees, finding it to be a permissible exercise of judicial case management discretion.

# **ARGUMENT**

THE DISTRICT COURT PERMISSIBLY AND PROPERLY AUTHORIZED DISCOVERY REGARDING, AND NOTICE TO, POTENTIAL OPT-IN EMPLOYEES FOR TWO OF THE THREE PROPOSED FLSA COLLECTIVE ACTIONS.

> A. In accord with the Supreme Court's *Hoffman-La Roche* Decision, District Courts Have Case Management Discretion Regarding Collective Actions.

Consistent with the scope of discretion defined by *Hoffmann-La Roche*, the district court permissibly concluded that Plaintiffs had shown the existence of two potential groups of opt-ins who were similarly situated for two of the three collectives, therein meeting the requirements of a collective claim under 16(b). The discovery and case management principles set out in Federal Rules of Civil Procedure 26 and 83, as examined in the 16(b) context by *Hoffman-La Roche*, confirm that the district court's approach in this case falls well within what is widely regarded as a permissible exercise of discretion.

Rule 26 authorizes discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," including information that may "not be admissible in evidence." Fed. R. Civ. Proc. 26(b)(1). "District courts have broad leeway over the discovery process." *Helena Agri-Enters, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021); *see also Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (stating that district courts have "broad discretion" over the discovery process).

15

Consistent with these principles, the Supreme Court in *Hoffmann-La Roche* affirmed that the names and addresses of other employees who may opt in to a collective action are discoverable. 493 U.S. at 170.

Likewise, Rule 83 provides that a "judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules." Fed. R. Civ. Proc. 83(b); *see also Pittman*, 901 F.3d at 642 ("District courts have broad discretion over docket control[.]"). Thus, "Rule 83 endorses measures to regulate the actions of the parties to a multiparty suit." *Hoffmann-La Roche*, 493 U.S. at 172. "This authority is well settled, as courts traditionally have exercised considerable authority 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* at 172-73 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Applying these case management principles to 16(b) collective actions, the Supreme Court determined, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71. And the Court further determined that district courts' managerial responsibility in 16(b) collective actions to oversee joinder includes authorizing notice to potential opt-ins and establishing a period of time for them to join the collective. *Id.* at 170-72.

In sum, as recognized by *Hoffman-La Roche*, the district court's decision here is well within the discretion afforded to trial judges by Rules 26 and 83. Stripping judges of this discretion in the 16(b) context, as Defendants urge, would be contrary to the case management principles embedded in these rules and to the Supreme Court's instruction. "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Hoffman-La Roche*, 493 U.S. at 171.

> B. Because This Case Is Different from *Swales*, This Court Need Not Opine on Whether *Swales* Was Correctly Decided.

This case presents different circumstances, and involves different questions, than *Swales*. In *Swales*, the Fifth Circuit concluded that the district court failed to consider the employer's evidence of material differences among potential opt-ins. The Fifth Circuit reasoned that this evidence could prevent the court from effectively adjudicating a collective challenge to an allegedly unlawful policy given that the employer had argued (and provided what it claimed was supporting evidence) that the independent contractor classification, which determines whether the workers are "employees" protected by the FLSA to begin with, may have been correct in regard to at least some individuals. By contrast, in this case, there was no reason to conclude that the challenged policies or practices would be lawful as

applied to some employees who worked overtime but not others. The salient question the district court faced instead was whether Plaintiffs had sufficiently demonstrated that there were other employees who were subject to the same allegedly unlawful policies or practices regarding travel time and differential pay. Purported differences among employees who worked overtime would not cure the asserted unlawfulness of the policies because unlike the dispute at issue in *Swales*, neither the failure to pay for travel time between two work sites during normal work hours, nor the requirement to include shift differential payments in the calculation of overtime premiums, depended on an employee's individual circumstances.

Therefore, *Swales* was addressing what it saw as the need for a district court to make a determination as to the extent, if any, to which differences among employees would impede collective litigation concerning whether the challenged policy was lawful. 985 F.3d at 434. It did not hold that a court must require extensive discovery or place rigorous demands on plaintiffs to establish the existence of a common policy or that the employer treated its employees the same under that policy, especially in the absence of meaningful disputes about those issues. To the contrary, as noted above, it stated that extensive preliminary discovery would not be required in cases, such as donning and doffing disputes,

where there were few differences among individuals that impacted their experience of a policy or practice. *Id.* at 441-42.

The district court in this case had to assess whether Plaintiffs had produced enough evidence to show that other employees were subjected to the same allegedly unlawful travel-time and overtime-calculation policies that Plaintiffs challenged. Based on its determination that Plaintiffs had submitted declarations and other evidence tending to show that Defendants applied these policies – i.e., never paying for client-to-client travel time, and improperly excluding shift differential payments from the calculation of the regular rate for the purpose of determining overtime premiums – across their workforce, the court permitted discovery regarding, and notice to, the potential opt-in employees for these two collectives. Decision, RE 29, Page ID # 430. On the other hand, it declined to "certify" the other proposed collective of employees allegedly undercompensated for the use of their own vehicles because Plaintiffs had not produced sufficient evidence that there were other employees who were not paid for use of their own vehicles such that there was an allegedly unlawful policy extending beyond the treatment of the named Plaintiff (i.e., evidence to show "actual or even constructive knowledge that their coworkers also used their own vehicles to travel from client to client.") *Id.* at Page ID # 431.

19

The question presented in *Swales* – regarding when and how a court should scrutinize an employer's allegations or submissions that differences among employees mean that a sufficient showing has not been made that they are "similarly situated" as to the application and lawfulness of a challenged policy – was not central to the district court's ruling in this case. Therefore, because the pivotal question here did not turn on differences among employees subject to common policies, but rather on whether other employees existed who were treated in a similar manner and thus were subject to common policies, this case presents very different methodological and procedural issues than those presented in *Swales*. These differences are significant. As *Swales* itself recognized, district courts have "broad, litigation management discretion," and they are not "captive to … *any* 'certification' test." 985 F.3d at 443 (emphasis added). Courts must therefore analyze the "facts and circumstances" of each case to determine the best means of "facilitating notice," *Hoffman-La Roche*, 493 U.S. at 170, 172, and, as explained in the following section, that is precisely what the district court did here.[2]

---

[2] The merits of the result in *Swales* are not presented here for the reasons discussed herein. However, the Secretary notes that while *Swales* aptly identified that courts should review whether potential opt-in employees are similarly situated and should not participate in the solicitation of claims, *Swales* did not give substantial consideration to the Supreme Court's additional instruction that the rights bestowed by 16(b)'s collective action provision "depend on employees receiving

C. The District Court Did Not Abuse Its Discretion by Permitting Notice
   Where Plaintiffs Had Provided Sufficient Evidence of the Existence of
   Other Similarly Situated Claimants.

Here, the court reasonably exercised its discretion to permit notice and

related discovery after concluding that Plaintiffs had provided "something more

than mere allegations" to substantiate their assertions that other employees had

suffered from the policies they challenged. Decision, RE 29, Page ID ## 430-34

(internal quotation marks omitted). Specifically, to determine that a group of

similarly situated employees existed, the district court relied upon, *inter alia*,

evidence that the allegedly unlawful travel-time policies – that no employee would

be paid for travel time in between work sites – had been announced at large

trainings, and that a manager had personal knowledge of the allegedly unlawful

shift-differential pay practices across the workforce. *Id*. Thus, Plaintiffs alleged, in

logical and reasonable detail, practices that violated FLSA's pay requirements and

supported their claims with evidence showing the existence of collectives of

employees who were similarly situated in regard to those alleged violations,

therein meeting the requirements of a collective action under 16(b). The district

---

accurate and *timely* notice concerning the pendency of the collective action, so that
they can make informed decisions about whether to participate." *Hoffmann-La
Roche*, 493 U.S. at 170 (emphasis added). This failure to give sufficient weight to
the importance of timely notice will result in many employees' collective claims
being time-barred. The need for timely notice must inform a court's method of
determining whether a showing that other employees are "similarly situated"
warrants notice and discovery of their contact information.

court was correct to permit discovery to identify, and issuance of notice to, persons who could be part of these two collectives.[3]

Moreover, the district court's approach here is well-tailored to a case in which the parties' key dispute concerns whether the employer has applied the allegedly unlawful practice or policy to employees other than the lead plaintiffs. If an employee offers only conclusory allegations that a common practice and treatment under it exist, or exaggerates the scope of that practice, then the employer can point that out in opposing a motion for discovery regarding, and notice to, potential opt-ins for a specific collective.[4] And if, as here, an employee

---

[3] The Secretary notes the district court approved of the notice with an opt-in period of 60 days but rejected Plaintiffs' request to send a reminder notice to putative opt-ins because, the court reasoned, in this case, it would "risk stirring up litigation and improperly suggesting the Court's endorsement of the claims." Decision, RE 29, Page ID ## 445-446. As this illustrates, courts can, and do, oversee the method and wording of notice to ensure that it does not devolve into the "solicitation of claims" precluded by *Hoffman-La Roche*. 482 U.S. at 488.

[4] Here, of course, Plaintiffs sought three collectives, but the district court determined that they met their burden for only two. Decision, RE 29, Page ID # 441. Other district courts in this Circuit also regularly find that plaintiffs have failed to show that potential opt-ins are similarly situated. *See, e.g.*, *Gorie v. Amazon.com Servs., LLC*, No. 1:20-CV-01387, 2021 WL 4304281 (N.D. Ohio Sept. 22, 2021); *Miner v. Newman Tech., Inc.*, No. 1:21-cv-00694, 2021 WL 3652277 (N.D. Ohio Aug. 18, 2021) (same); *Marlow v. Mid-South Maint. of Tennessee, LLC*, No. 3:20-cv-00711, 2021 WL 981550 (M.D. Tenn. Mar. 16, 2021) (same); *Gallager v. Gen. Motors Co.*, No. 19-11836, 2020 WL 3481649 (E.D. Mich. Jun. 26, 2020) (same). These cases demonstrate that the fear of litigation "proceeding through discovery as a collective action without any finding that the plaintiffs are similarly situated," Br. for the Chamber of Com. and Nat'l

presents facts reasonably supporting the existence of a common policy applied to other employees, the employer can present rebuttal evidence as to its own treatment of employees. In this case, Defendants' opposition to Plaintiffs' motion faulted Plaintiffs' evidence for "failing to identify any specific personal knowledge concerning the employment situations of any other employee," and for failing to submit evidence that "other similarly situated employees were subject to the same policies." Defs.' Mem. In Opp'n to Pls.' Mot. to Conditionally Certify Class, RE 19, Page ID ## 288-289. Not only did Plaintiffs in fact present such evidence for two of the three collectives, but more importantly, Defendants never denied that many other employees were subject to, and affected similarly by, the same policies the Plaintiffs challenged. Nothing in *Swales* suggests that the district court was required to engage in a more exhaustive inquiry in these circumstances.

Furthermore, Defendants are incorrect when they assert, First Br. of Defs.-Appellants 21-24, that the district court's approach is somehow rooted in the "fair notice" pleading standard that the Supreme Court rejected in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To the contrary, the district court expressly stated that the standard it was applying required "something more than mere allegations," a standard that is more rigorous

---

Fed'n of Indep. Bus. as Amici Curiae 5, misreads the state of the caselaw in this Circuit.

than *Iqbal* and *Twombly*, and, accordingly, cited to the specific details of Plaintiffs'
specific declarations. Indeed, the district court refused to permit notice based on
allegations that it deemed were "conclusory" or not "plausible," Decision, RE 29,
Page ID # 432, relying instead on Plaintiff's evidentiary submissions, thus
demonstrating that it was not willing to go below the *Iqbal* and *Twombly*
requirements.

Finally, Defendants' assertions that the district court should have ordered
more extensive discovery before authorizing notice, First Br. of Defs.-Appellants
27-31, similarly miss the mark. In the circumstances of this case, that approach
would have served no purpose because the key dispute is whether Defendants had
applied the unlawful policies to other employees. If they had not, they could have
volunteered the evidence establishing as much, or at least asserted the existence of
such evidence. If they had applied a common policy, it would waste time and
resources to require Plaintiffs to engage in discovery simply to compel Defendants
to produce the evidence they possess establishing that policy, and to then require
the district court to rigorously scrutinize the evidence Defendants produced. The
only result of that exercise would be to ensure that more potential employees'
claims are time barred when notice is finally sent. Defendants' proposal would thus
directly undermine the goal of "accurate and timely notice," which, as the Supreme

Court held in *Hoffman La-Roche*, is critical to effectuating the FLSA's collective action provisions.

## **CONCLUSION**

For the foregoing reasons, the Secretary respectfully requests this Court affirm the district court's decision to issue notice to, and allow discovery regarding, two collectives of similarly situated employees.

Dated: July 12, 2022                     Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

s/ Lindsey Rothfeder
LINDSEY ROTHFEDER
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
202-693-7052
rothfeder.lindsey@dol.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 29(a)(4) and 32(g), I certify that the foregoing Brief for the Secretary of Labor as *Amicus Curiae* in Support of Plaintiffs-Appellees/Cross-Appellants:

(1) was prepared in a monospaced typeface using Microsoft Office Word 2016 utilizing Times New Roman 14-point font containing no more than 10.5 characters per inch, and

(2) complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 5,720 words, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32.

/s/ Lindsey Rothfeder
LINDSEY ROTHFEDER

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Brief for the Secretary of

Labor as *Amicus Curiae* in Support of Respondents was served this 12th day of

July, 2022, via this Court's ECF system on the following registered users:

M. Scott McIntyre (0075298)
smcintyre@bakerlaw.com
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
*Attorney for Appellants/Cross-Appellees*

Gregory V. Mersol (0030838)
gmersol@bakerlaw.com
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
*Attorney for Appellants/Cross-Appellees*

Greg R. Mansell (0085197)
(Greg@MansellLawLLC.com*)*
Carrie J. Dyer (0090539)
(Carrie@MansellLawLLC.com)
Rhiannon M. Herbert (0098737)
(Rhiannon@MansellLawLLC.com)
Mansell Law, LLC
1457 S. High St.
Columbus, OH 43207
*Counsel for Appellees/Cross-Appellants*

/s/ Lindsey Rothfeder
LINDSEY ROTHFEDER

27